1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WINSTON KEMPER,                           No.  2:14-cv-0305 TLN KJN P

12                    Plaintiff,

13          v.                                  FINDINGS & RECOMMENDATIONS

14   DR. CROSSON, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff filed this civil rights

18   complaint, pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that defendants Dr. Crosson and Dr.

19   Pai, erroneously named as Dr. Pie, were deliberately indifferent to his serious medical needs, in

20   violation of the Eighth Amendment.  On February 12, 2013, pursuant to a referral by Dr. Pai, a

21   physician and surgeon employed at the California Medical Facility, plaintiff was seen by Dr.

22   Crosson, an ophthalmologist in Fairfield, California, in order to be evaluated and undergo a laser

23   procedure in both eyes to relieve pressure.  (ECF No. 24.)  Both defendants move to dismiss

24   alleging that plaintiff fails to state a cognizable civil rights claim, including a claim that it appears

25   from the face of the pleading that plaintiff failed to exhaust his administrative remedies prior to

26   filing the instant action.  As set forth below, the undersigned recommends that defendants'

27   motions to dismiss be granted.

28   ////

1

I. Rule 12(b)(6) Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

2

1    subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899

2    (9th Cir. 2007) (citation and quotation marks omitted).

3    II.  Alleged Failure to Exhaust

4         A.  Legal Standard

5         The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

6    provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

7    § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

8    facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

9    Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516,

10   524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

11   confinement, whether they involve general circumstances or particular episodes, and whether they

12   allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

13        Proper exhaustion of available remedies is mandatory.  Booth v. Churner, 532 U.S. 731,

14   741 (2001).  "Proper exhaustion demands compliance with an agency's deadlines and other

15   critical procedural rules."  Woodford v. Ngo, 548 U.S. 81, 95-96 (2006).  For a remedy to be

16   available, there must be the "possibility of some relief. . . ."  Booth, 532 U.S. at 738.  Relying on

17   Booth, the Ninth Circuit has held:

18             [A] prisoner need not press on to exhaust further levels of review
              once he has received all "available" remedies at an intermediate
19            level of review or has been reliably informed by an administrator
              that no remedies are available.
20

21   Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

22        Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

23   and prove."  Jones v. Bock, 549 U.S. 199, 204, 216 (2007).  To carry this burden,

24            a defendant must demonstrate that pertinent relief remained
              available, whether at unexhausted levels of the grievance process or
25            through awaiting the results of the relief already granted as a result
              of that process.  Relevant evidence in so demonstrating would
26            include statutes, regulations, and other official directives that
              explain the scope of the administrative review process;
27            documentary or testimonial evidence from prison officials who
              administer the review process; and information provided to the
28            prisoner concerning the operation of the grievance procedure in this

3

1
2
3

> case. . . .   With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

4    <u>Brown</u>, 422 F.3d at 936-37 (citations omitted).

5          A motion asserting an affirmative defense such as failure to exhaust may be brought under

6    Rule 12(b)(6) or Rule 56 depending on whether the factual predicate for the motion is based on

7    the text of the pleading or instead depends upon evidence submitted with the motion.  <u>See</u> <u>Albino</u>

8    <u>v. Baca</u>, 747 F.3d 1162, 1169 (9th Cir.) ("in those rare cases where a failure to exhaust is clear

9    from the face of the complaint, a defendant may successfully move to dismiss under Rule

10   12(b)(6) for failure to state a claim."), <u>cert. denied sub nom.</u> <u>Scott v. Albino</u>, 135 S. Ct. 403

11   (2014); <u>Bock</u>, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if

12   the allegations, taken as true, show the plaintiff is not entitled to relief.").  The administrative

13   process is exhausted only after the inmate complies with all relevant prison grievance procedures

14   and receives a decision from the third level.  <u>Ngo</u>, 548 U.S. at 95-96.

15         B.  <u>Administrative Appeal Process</u>

16         The California Department of Corrections and Rehabilitation ("CDCR") provides inmates

17   the right to appeal administratively "any policy, decision, action, condition, or omission by the

18   department or its staff that the inmate or parolee can demonstrate as having a material adverse

19   effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Following

20   amendments that took effect January 28, 2011, California prisoners are required to proceed

21   through three levels of appeal to exhaust the administrative appeal process:  (1) formal written

22   appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or

23   designee; and (3) third level appeal to the Director of the CDCR.  <u>See</u> 15 Cal. Code Regs.

24   § 3084.1-3084.9.[1]  A final decision from the Director's level of review satisfies the exhaustion

25   requirement under 42 U.S.C. § 1997e(a).  <u>See</u> <u>Lira v. Herrera</u>, 427 F.3d 1164, 1166-67 (9th Cir.

26   2005); <u>see also</u> Cal. Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).

27

28   _____
     [1] The informal resolution level was eliminated.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.7 (as amended Dec. 13, 2010).

1        To initiate an appeal, the inmate must submit a CDCR Form 602 describing the issue to be

2    appealed and the relief requested to the appeals coordinator's office at the institution.  Id.

3    § 3084.2(a)-(c).  An inmate must submit the appeal within 30 calendar days of:  (1) the

4    occurrence of the event or decision being appealed; or (2) first having knowledge of the action or

5    decision being appealed; or (3) receiving an unsatisfactory departmental response to an appeal.

6    Id. § 3084.8(b).  Specific time limits apply to the processing of each administrative appeal.  See

7    Cal. Code Regs. tit. 15, § 3084.8.  Absent any specific exceptions, the first and second level

8    administrative responses are required to be completed "within 30 working days from [the] date of

9    receipt by the appeals coordinator," and a third level response is due within 60 working days from

10    the date the appeal is received by the appeals chief.  Id.

11        C.  Discussion

12        In his verified pleading, plaintiff concedes that he did not exhaust the administrative

13    grievance process because "he was not aware [he] had to do so."  (ECF No. 24 at 2.)  In his

14    opposition to the motion, plaintiff now claims that he thought he had exhausted his administrative

15    remedies, citing Gomez v. Winslow, 177 F.Supp. 2d 977 (N.D. Cal. 2001), and provided a copy

16    of a 2014 administrative appeal seeking referral to an outside specialist.  (ECF No. 53 at 3.)

17        i.  Administrative Appeal CHCF SC14000189

18        In this appeal, signed on July 28, 2014, plaintiff seeks referral to "any eye specialist

19    capable of assessing the condition of [his] eyes other than Dr. Crosson."  (ECF No. 53 at 3.)

20    Plaintiff explained his issue as "I have a very serious medical complaint against the

21    ophthalmologist (Dr. Crosson).  I'm willing to see anyone else capable of assessing my eye

22    condition except Dr. Crosson."  (ECF No. 53 at 3.)

23        This appeal could not serve to exhaust the instant claims for several reasons.  First, appeal

24    CHCF SC14000189 was submitted long after this action was filed on November 27, 2013.  In

25    order to properly exhaust his administrative remedies, plaintiff was required to complete his

26    administrative remedies before he filed this action.  Porter, 534 U.S. at 532.  Thus, appeals filed

27    after November 27, 2013, cannot serve to exhaust his administrative remedies in connection with

28    plaintiff's instant claims.  Second, this appeal fails to identify what Dr. Crosson did or did not do,

1    and also fails to mention Dr. Pai, or include any allegations identifying actions or omissions that

2    could be attributable to Dr. Pai.  Therefore, this appeal fails to put prison officials on notice of

3    defendants' alleged wrongdoing.  Appeal CHCF SC14000189 did not exhaust plaintiff's claims.

4                          ii.  Administrative Appeal HC 13038036

5            With his original complaint, plaintiff provided a copy of his Appeal HC 13038036, in

6    which he noted "damage to [his] eyes by optometrist," and "what was done and what [he] thought

7    would be done to [his] eyes were 2 different things."  (ECF No. 1 at 6.)  In this appeal, plaintiff

8    sought a referral to an optometrist "due to the damage to [his] eyes (strain & pain) request visit to

9    optometrist not Dr. Crosson."  (ECF No. 1 at 6.)  Plaintiff provided a copy of the consent form he

10   signed on February 12, 2013, for the eye procedure:  "laser openings to prevent high eye pressure

11   attack both eyes."  (ECF No. 1 at 7.)  Appeal HC 13038036 was rejected on April 13, 2013,

12   stating plaintiff failed to provide sufficient information.  (ECF No. 1 at 5.)  Plaintiff was

13   instructed to return the form and the appeal with the necessary information.  (ECF No. 1 at 5.)

14   Also, at the bottom of the form, inmates are alerted that they "should take the corrective action

15   necessary and resubmit the appeal within the timeframes," and providing reference to additional

16   Title 15 regulations.  (ECF No. 1 at 5.)

17           The administrative process is exhausted only after the inmate complies with all relevant

18   prison grievance procedures and receives a decision from the third level.  Ngo, 548 U.S. at 95-96;

19   see also Sapp v. Kimbrell, 623 F.3d 813, 826 (9th Cir. 2010) (dismissal is appropriate where

20   administrative grievances were properly screened out).  "[A] cancellation or rejection decision

21   does not exhaust administrative remedies."  Cal. Code Regs. tit. 15, § 3084.1(b).

22           It appears that plaintiff failed to further pursue appeal HC 13038036, despite being

23   provided specific instructions on the initial rejection.  Plaintiff was directed to the appropriate

24   sections of Title 15 to assist him in taking corrective action.  Accordingly, appeal HC 13038036

25   did not exhaust plaintiff's administrative remedies.

26           Finally, plaintiff's reliance on Gomez is unavailing.  In Gomez, the court found that a

27   general grievance about inadequate medical care may satisfy the exhaustion requirement as to

28   specific aspects of a medical care claim if it puts prison officials on notice of the complaints.

1    Gomez pursued an administrative appeal that put prison officials on notice of his claim that he

2    had received, and was continuing to receive, inadequate medical care for his hepatitis, through the

3    second level of review where he was granted partial relief.  Here, in two separate verified

4    pleadings, plaintiff conceded that he did not complete the grievance process because he was not

5    aware he had to file a grievance concerning the facts relating to his complaint.  (ECF Nos. 22, 24

6    at 2.)

7           In 2014, the Ninth Circuit explained that a litigant's alleged unawareness of administrative

8    remedies is no excuse:

9                    litigants in this circuit were presumed to have knowledge of duly
                     enacted laws, regulations, and procedures.  See Luna v. Holder, 659
10                   F.3d 753, 759 (9th Cir. 2011) (presuming aliens had notice of duly
                     enacted federal regulations and guidelines issued thereunder).
11                   Grievance procedures in California jails are promulgated under the
                     direction of state laws and regulations.  See Cal. Penal Code
12                   § 6030(a); Cal. Code Regs. tit. 15, § 1073(a).

13   Albino, 747 F.3d at 1182.  Thus, plaintiff may not be excused from exhausting administrative

14   remedies by simply claiming he was unaware of the exhaustion requirement.

15          For all of the above reasons, it is apparent from the face of plaintiff's pleading that he

16   failed to exhaust his administrative remedies prior to filing the instant action.  Therefore, this

17   action should be dismissed without prejudice based on plaintiff's failure to exhaust administrative

18   remedies.

19   III.  Alleged Failure to State a Claim

20          Further, defendants argue that plaintiff fails to allege facts demonstrating that either were

21   deliberately indifferent to plaintiff's serious medical needs, and contend that a difference of

22   opinion over a course of medical treatment or medical malpractice is insufficient to demonstrate

23   an Eighth Amendment violation.

24          To maintain an Eighth Amendment claim based on prison medical treatment, plaintiff

25   must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition

26   could result in further significant injury or the unnecessary and wanton infliction of pain, and (2)

27   a deliberately indifferent response by defendant.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

28   2006).

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Jett, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Differences in medical opinion do not rise to the level of an Eighth Amendment violation. A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was

medically unacceptable under the circumstances" and "that they chose this course in conscious

disregard of an excessive risk to [the prisoner's] health."  See Jackson v. McIntosh, 90 F.3d 330,

332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's

awareness of need for treatment followed by his unnecessary delay in implementing the

prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, 681

F.3d 978, 988 (9th Cir. 2012) (decision of non-treating, non-specialist physicians to repeatedly

deny recommended surgical treatment may be medically unacceptable under all the

circumstances.)

  Here, the record reflects that plaintiff signed a consent form on February 12, 2013, to

undergo a laser procedure to relieve eye pressure.  Plaintiff alleges that Dr. Pai acted with

deliberate indifference when she referred plaintiff to an ophthalmologist and he was "subjected"

to a laser procedure to relieve eye pressure.  Dr. Pai argues that a referral to an ophthalmologist

does not rise to the level of a civil rights violation.  Dr. Crosson argues that, even assuming the

laser procedure somehow caused injury to plaintiff's eyes, medical malpractice is insufficient to

state a federal civil rights claim, and plaintiff failed to allege any facts demonstrating a culpable

state of mind on the part of Dr. Crosson.

  In opposition, plaintiff provides no additional factual allegations to demonstrate deliberate

indifference on the part of either defendant.  Rather, plaintiff argues he is in poor health and

suffers from a mental illness.  (ECF No. 46 at 1, 3.)  Plaintiff repeats his earlier claims that

defendants caused him glaucoma and insisted on a procedure he did not request.  (Id.)  In

addition, plaintiff provided a copy of an April 23, 2013 request for health care services form in

which plaintiff's physician requested a second opinion from an outside provider for "S/P [Status

Post] YAG Iridotomy," noting "pressures still elevated."  (ECF No. 53 at 4.)  Plaintiff's principle

diagnosis was listed as glaucoma.  (Id.)  Plaintiff was evaluated by a consultant on July 23, 2013,

who recommended holding off on surgical intervention, "if eye pressure increases or inconsistent

with medications, consider phaco/ECP."  (ECF No. 53 at 4.)

  Thus, the record reflects that Dr. Pai referred plaintiff to an outside ophthalmologist, Dr.

Crosson, who recommended that plaintiff undergo the laser procedure to prevent high eye

1   pressure in both eyes, and plaintiff signed the consent form for the procedure on February 12,

2   2013.  Following the laser procedure, plaintiff was referred for a second opinion to an outside

3   consultant, and he was evaluated on July 23, 2013.  While it appears that plaintiff believes he

4   should not have been referred to Dr. Crosson, and should not have received the laser procedure,

5   his disagreement with such medical professionals is insufficient to demonstrate either defendant's

6   deliberate indifference.  Taking plaintiff's claims as true, as this court must on a motion to

7   dismiss, plaintiff's claims reflect negligence or, at most, medical malpractice.  Plaintiff fails to

8   allege facts demonstrating that either defendant acted with a culpable state of mind.  Therefore,

9   defendants' motions to dismiss should be granted.

10   IV.  Recommendation

11         Accordingly, IT IS HEREBY IT IS RECOMMENDED that defendants' motions to

12   dismiss (ECF Nos. 40, 49) be granted, and this action be dismissed without prejudice.

13         These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18   objections shall be served and filed within fourteen days after service of the objections.  The

19   parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21   Dated:  August 10, 2016

22

23                                    KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE
24

25   /kemp0305.mtd.fte

26

27

28

                                          10